IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SHAMS HASHMAT, *Plaintiff,* | § | 5:26-CV-00130-FB-RBF |
| vs. | § | |
| PAM BONDI, KRISTI NOEM, TODD M. LYONS, LETICIA DIAZ, *Defendants.* | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Petitioner's Petition for Writ of Habeas Corpus. *See* Dkt. No. 1 ("Petition" or "Pet."); *see also* Dkt. Nos. 9 ("Response" or "Resp."), 20 ("Reply"). Pretrial matters are referred for resolution, pursuant to Rule CV-72 and Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 21. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, the Petition, Dkt. No. 1, should be **GRANTED IN PART** as set forth herein, and Petitioner should be released from Respondents' custody. Any relief not recommended herein should be **DENIED**.

**Factual and Procedural Background**

Petitioner, an Afghan National, first entered the United States on September 9, 2024. Dkt. No. 9-1 ("Salazar Declaration" or "ERO Decl.") ¶ 4; Pet. at 7; Reply at 1. Petitioner encountered immigration officials, was detained, and then was served with a Notice and Order of Expedited

Removal. ERO Decl. ¶ 5. On January 10, 2025, Petitioner was convicted of Illegal Entry under 8 U.S.C. § 1325 and sentenced to time serve; Petitioner was then taken into ICE custody where he was processed for expedited removal. ERO Decl. ¶¶ 6, 7; *see also* Dkt. No. 10.

On February 24, 2025, United States Citizen and Immigration Services ("USCIS") conducted Petitioner's credible-fear interview and issued a negative credible-fear finding. ERO Decl. ¶ 8. Petitioner requested redetermination, and on March 6, 2025, an Immigration Judge vacated USCIS's negative credible-fear determination. *Id.* ¶¶ 8, 10. Petitioner on March 18, 2025, was served with a Notice to Appear and charged with being present in the United States without being admitted or paroled and not having valid entry documents. *Id.* ¶ 11. On July 2, 2025, an Immigration Judge denied Petitioner's application for asylum and ordered Petitioner removed to Afghanistan. *Id.* ¶ 12. Petitioner didn't appeal the Immigration Judge's decision, *id.*, and accordingly, Petitioner's Order of Removal became administratively final.[1] *See* 8 C.F.R. § 1241.1(c) (stating, an order of removal becomes final "[u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time"); *see also* 8 C.F.R. § 1003.38(b) (effective Mar. 9, 2026) (providing for 10 or 30 days to appeal to the BIA from the immigration judge's decision depending on the case).

Petitioner filed his pro se Petition for Writ of Habeas Corpus on January 9, 2026. *See* Pet. The District Judge on January 27, 2026, ordered Respondents to respond to the Petition. Dkt. No. 3. Federal Respondents filed a Response on March 2, 2026. *See* Dkt. No. 9. Attached to the Response is a declaration from Stephanie Salazar, a Deportation Officer for ICE Enforcement

[1] Petitioner and Respondents both state that the order of removal became final on July 2, 2025. Resp. at 4 (citing Pet. at 2); Reply at 1. The Court clarifies, however, that pursuant to 8 C.F.R. §§ 1003.38(b) & 1241.1(c), Petitioner's order of removal became administratively final at earliest, July 13, 2025, and at latest, August 2, 2025.

and Removal Operations for the San Antonio Field Office ("ERO San Antonio"). *See* ERO Decl. The Salazar Declaration outlines the efforts Respondents have undertaken to secure Petitioner's removal.

According to the Salazar Declaration, on August 20, 2025, ERO Removal Management Division advised ERO San Antonio that the Government of Afghanistan stopped receiving Afghan Nationals traveling from the United States, regardless of travel documents or passport status and advised that wait times for removal to Afghanistan of between three to 50 days were possible. ERO Decl. ¶ 14. ERO San Antonio, on February 2, 2026, submitted a transportation-letter application to Petitioner. *Id.* ¶ 16. On February 4, 2026, Petitioner provided a copy of his Afghan National ID card, which was emailed to the detention and deportation officer for review and approval. *Id.* ¶ 17. On February 20, 2026, ERO San Antonio served Petitioner with a 180-day post Order custody-review decision to continue detention. *Id.* ¶ 19. And on February 24, 2026, ERO sent a travel-letter request to the U.S. Mission Afghanistan in Doha for action. *Id.* ¶ 20. The transportation-letter application and the travel-letter request remain pending. *Id.*

Counsel appeared on behalf of Petitioner on July 21, 2026. *See* Dkt. No. 17. Thereafter, Petitioner, through counsel of record, requested leave to file a reply in support of the Petition, *see* Dkt. No. 18, which the Court granted on July 29, 2026, *see* Dkt. No. 19. On July 29, 2026, the Court also stayed the transfer of Petitioner, specifically noting that its Order, "does not stay this case or any order of removal and/or removal proceedings and does not preclude Respondents from taking necessary steps to effect Petitioner's removal." *Id.* at 1-2. Rather, the Order stayed "only the physical transfer of the Petitioner." *Id.* at 2. Also on July 29, 2026, Petitioner filed a reply in support of the Petition. *See* Dkt. No. 20.

**Analysis**

Through the pro se Petition and clarified in the Reply, Petitioner seeks release from ICE detention under reasonable conditions of release while he awaits removal, either to Afghanistan or a suitable third country. *See* Pet. at 6-7; Reply at 1, 4, 6. Petitioner clarifies in the Reply that he doesn't challenge Respondents' right to affect his removal. *See id.* at 1. Rather, Petitioner argues that he is entitled to relief because his detention violates 8 U.S.C. § 1231(a) and due process because there is no indication he will be removed in the reasonably foreseeable future. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). Petitioner also argues that his continued detention violates his procedural due process rights under *Mathews v. Eldridge*. *See* Reply at 4-8 (citing *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976)).

**A. The Court Has Jurisdiction to Address a *Zadvydas* Claim.**

Although Federal Respondents don't appear to contest the Court's jurisdiction to address a claim invoking *Zadvydas*, the Court addresses the topic *sua sponte*, as it must. Although the Immigration Nationality Act curtails the jurisdiction of federal district courts, it does not bar federal district court consideration of habeas petitions challenging a petitioner's indefinite detention following the entry of a final order of removal. *See, e.g.*, *Zadvydas*, 533 U.S. at 688. Accordingly, the Court has jurisdiction to address a challenge to the foreseeability of Petitioner's removal following the entry of a final order of removal in his case. Because the Court ultimately recommends a grant of relief on this claim, there is no need to address jurisdiction over, or the merits of, the remaining claim for habeas relief.

**B. Petitioner's Removal is Not Reasonably Foreseeable.**

The limits on detention pending deportation, after a final order of removal, are settled. "Once an alien is ordered removed, DHS must physically remove him from the United States

within a 90-day 'removal period.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(A)). During the 90-day removal period, detention is mandatory. *See id.* (citing 8 U.S.C. § 1231(a)(2)). "Upon expiration of the removal period, the Government may continue to detain certain aliens or release them under conditions of supervision." *Abuelhawa v. Noem*, 811 F.Supp.3d 847, 855 (S.D. Tex. 2025) (citing 8 U.S.C. § 1231(a)(6)).

The 90-day removal period may be extended to permit prolonged detention in at least three circumstances. *See Trejo v. Warden of ERO El Paso E. Montana*, 807 F.Supp.3d 697, 705 (W.D. Tex. 2025). For example, an alien may be detained beyond the removal period if he is "(1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order." *Guzman Chavez*, 594 U.S. at 528-29 (citing *inter alia* 8 U.S.C. § 1231(a)(6)).

"The statute does not specify a time limit on how long DHS may detain an alien in the post-removal period." *Id.* at 529. But due process demands that the alien not be detained indefinitely. *See Zadvydas*, 533 U.S. at 697. Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem," the Supreme Court has "read an implicit limitation into the statute"—namely, that post-removal detention may not last longer than "reasonably necessary to bring about that alien's removal[.]" *See id.* at 689-90. Recognizing that not all reasonably foreseeable removals can be accomplished within the 90-day removal period, the Court has generally held that such detentions are "presumptively reasonable" for up to "six months." *Id.* at 701. Release is required, however, if "there is no significant likelihood of removal in the reasonably foreseeable future." *Guzman Chavez*, 594 U.S. at 529 (quoting *Zadvydas*, 533 U.S. at 701).

It is undisputed that the statutorily prescribed 90-day removal period and the presumptively reasonably six-month removal period have both expired here. Petitioner's order of removal became administratively final in July or August of 2024. Pet. at 7, ¶ 15; Resp. at 1, 4; ERO Decl. ¶ 12; Reply at 1, 2; *see also* 8 C.F.R. §§ 1003.38(b) & 1241.1(c). And Petitioner is still in ICE custody, subject to a final order of removal, over 12 months later.

Petitioner is not likely to be removed in the reasonably foreseeable future. An immigration detainee who brings a claim under *Zadvydas before* expiration of the presumptively reasonable six-month period must *prove* "there is no significant likelihood of removal in the reasonably foreseeable future[.]" *See Zadvydas*, 533 U.S. at 699-701; *see also Truong v. Bondi*, No. 5:25-CV-01947-XR, 2026 WL 475296, at *3 (W.D. Tex. Feb. 11, 2026) (citations omitted). But to make out a *Zadvydas* claim *after* the six months have run, an immigration detainee need generally only "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Zadvydas*, 533 U.S. at 701. And if he does so, "the Government must respond with evidence sufficient to rebut that showing." *Id.* Petitioner, through the Petition, and Reply, has carried his burden here, and Respondents fail to carry their burden to rebut it.[2]

Petitioner points out that his order of removal became administratively final twelve months ago, and yet Respondents have failed to secure travel documents—to Afghanistan or any suitable third country—necessary to make his removal possible. Reply at 2-4. Petitioner also notes that Respondents waited seven months before submitting the required transportation-letter application,

[2] Petitioner filed the Petition for Writ of Habeas Corpus pro se. *See* Dkt. No. 1. Petitioner requests some relief therein that the Court does not, and likely cannot, address here. The Court primarily relies on the arguments made by counsel on Petitioner's behalf in the Reply. *See* Dkt. No. 20. The Court notes that Respondents could have sought leave to file a sur-reply in response to the Reply brief filed by counsel of record and didn't do so here. Accordingly, the Court takes up the arguments available to it in the Petition, Response, and Reply.

which must be approved and issued by the government of Afghanistan in order for Petitioner to be returned to Afghanistan. Reply at 2-3; *see also* ERO Decl. ¶ 16. These undisputed facts easily meet the modest "good reason" standard. *See Zadvydas*, 533 U.S. at 701.

Respondents fail to rebut Petitioner's showing; indeed, the Government's proffered evidence only confirms that there is no significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Respondents concede that on August 20, 2025, ERO San Antonio was advised that "the Government of Afghanistan (GOA), had stopped receiving Afghan[] Nationals traveling from the United States, regardless of travel document, or passport status." ERO Decl. ¶ 14. Respondents also recognize that Afghan nationals require a transportation letter issued by the government of Afghanistan to effectuate any removal thereto. *Id.* ¶ 16. And yet, ERO waited until February 2, 2026, seven months after Petitioner's final order of removal, to submit the transportation-letter application. *See id.* ¶ 16. Thereafter, on February 24, 2026, the Government sent a travel-letter request to the U.S. Mission Afghanistan in Doha for action. *Id.* ¶ 20. The record reflects no further updates from the Government concerning Petitioner's removal.

Now, over 12 months have passed since Petitioner's order of removal became final, and seven months have passed since the Government took any action to remove Petitioner via the transportation-letter application and travel-letter request, both of which remain pending. ERO Decl. ¶¶ 12, 16, 20. Respondents' mere pending request to Afghanistan to accept Petitioner does not show Petitioner will likely be removed in the reasonably foreseeable future. *See Trejo*, 807 F. Supp. 3d at 705 (finding that "Respondents cannot carry their burden [under *Zadvydas*] with the outstanding requests, alone"); *see also Medellin Martinez v. Bondi*, No. 5:25-CV-1319-OLG, at 5 (W.D. Tex. Nov. 21, 2025) (same). The mere "potential for a travel document at some point in the future is not sufficient to justify further detention." *Fermine v. Dir. of Immigr. & Customs Enf't*,

No. 2:06-cv-1578, 2007 WL 2284606, at *4 (W.D. La. May 23, 2007) (internal marks omitted), *report and recommendation adopted*, No. 2:06-cv-1578 (W.D. La. Aug. 6, 2007).

The Government has also made no attempt to remove Petitioner to a third country, despite its statutory authority to do so. *See* Resp at 3-5; *see also* Reply at 4. Any future third-country removal attempt will undoubtedly delay Petitioner's removal, given that "foreign governments 'routinely deny' requests to receive people who lack a connection to the would-be receiving country." *Puertas-Mendoza v. Bondi et al.*, No. 5:25-cv-00890-XR, 2025 WL 3142089, at *3 (W.D. Tex. Oct. 22, 2025) (citation omitted). Additionally, Respondents concede that "there is no anticipated timeline [for Petitioner's removal] at this time." Resp. at 5. In sum, Petitioner has sufficiently established that removal is not significantly likely in the reasonably foreseeable future.

"The Court is mindful that the government has the right to enforce [Petitioners]'s Order of Removal. But the government may not detain [Petitioner] for an indefinite and undetermined period of time while it tries to effect that removal when the circumstances are such that his removal is not reasonably likely in the foreseeable future. Such an action violates the Due Process Clause, as explained in *Zadvydas*." *Villanueva v. Tate*, 801 F.Supp.3d 689, 704 (S.D. Tex. 2025). Thus, Petitioner should be released. *See Zadvydas*, 533 U.S. at 699.

**C. Petitioner Should Be Released on an Order of Supervision.**

Having determined that Respondents violated Petitioner's rights under *Zadvydas*, the Court considers the scope of appropriate relief. Relief for a *Zadvydas* claims like Petitioner's is release. *See Zadvydas*, 533 U.S. at 701 (stating that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future").

The relief requested by Petitioner is release from custody "under reasonable conditions of supervision." Reply at 6. Accordingly, the Court recommends Petitioner be released subject to an Order of Supervision pursuant to 8 U.S.C. § 1231(a)(3) and in accordance with 8 C.F.R. § 241.5.

*See Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *4 (E.D. Tex. Aug. 2, 2025) (ordering that re-detained petitioner be released "subject to an order of supervision in accordance with 8 C.F.R. § 241.5").

**Conclusion and Recommendation**

For the reasons discussed above, **IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus, Dkt. No. 1, be **GRANTED IN PART** and Respondents be ordered to **RELEASE** Petitioner subject to an order of supervision in accordance with 8 C.F.R. § 241.5. Any other relief not specifically recommended herein should be **DENIED**.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this Report and Recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this deadline is modified by the Court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the presiding District Judge's standing orders or other Court order. *See* W.D. Tex. Local Rule CV-7. The objecting party shall file the objections with the Clerk of the Court and serve the objections on all other parties.

A party is entitled to a *de novo* review by the District Judge of the findings and conclusions contained in this Report and Recommendation, only if specific objections are made. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the default time to file objections from 10 to 14 days). An objecting party must therefore specifically identify those findings, conclusions, or recommendations to which objections are made, as well as the basis for all such objections; the District Judge need not consider frivolous, conclusory, or general objections. *Id*. Failure to timely file written, specific objections to any proposed findings, conclusions, or recommendations contained in this Report and Recommendation will bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the District Judge, except on grounds of plain error, given that the party is here provided notice that such consequences will result from a failure to object. *See* 28 U.S.C. § 636(b)(1)(C); *Douglass*, 79 F.3d at 1417. Finally, facts or legal arguments raised for the first time in objections to a Magistrate Judge's findings, conclusions, and recommendations are "not properly before the district court." *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992); *see also Shambaugh & Son, L.P. v. Steadfast Ins. Co*., 91 F.4th 364, 369 (5th Cir. 2024) ("[The Fifth Circuit] considers arguments forfeited if they are not raised before a magistrate judge, even if they are subsequently raised before the reviewing district [judge] in objections to the magistrate judge's report and recommendation.").

**IT IS SO ORDERED**.

**SIGNED** this 9th day of October, 2026.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE